**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2063
_____

TRACY MARROW, a/k/a Reginald Hawkins a/k/a Jeffrey Boyd,
Appellant

v.

SUPERINTENDENT LAWLER, SCI-Huntingdon; GRANLUND, Unit Manager; MRS.
GRANLUND; ROSE A. MCKINNEY, Records Room Employee; MS. MARHELKO;
MRS. SUSAN WOLFE, Records Room Employee - SCI-Frackville;
SUPERINTENDENT BRITTAIN; KIMBERLY A. BARKLEY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-19-cv-01690)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2022
Before:  GREENAWAY, JR., PORTER and NYGAARD, Circuit Judges

(Opinion filed: March 15, 2022)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Tracy Marrow, a Pennsylvania state prisoner, appeals the District Court's entry of summary judgment in favor of Defendants. For the following reasons, we will affirm.

In 1990, Marrow began serving a 2-to-12-year sentence in Pennsylvania, under the Department of Corrections (DOC) Inmate No. BG4076, following his convictions for robbery and theft. He was paroled in 1993 but was returned to custody and found to be a technical parole violator in 1994. Since then, Marrow has served time on various sentences, including in New Jersey, for parole violations and other offenses. As of May 1, 2007, Marrow was found to have served "just over six years in Pennsylvania custody on his 1990 sentence." Hawkins v. Pa. Bd. of Prob. & Parole, No. 07-0552, 2007 WL 1852822, at *2 (E.D. Pa. June 26, 2007). The 1990 ("BG4076") sentence was deemed completed on January 27, 2017, at which point Marrow began serving his current sentence of 8 1/2 to 20 years' imprisonment under DOC Inmate No. MV5624 for robberies and related offenses; his maximum date of release is March 11, 2035.

On October 1, 2019, Marrow filed a civil rights action pursuant to 42 U.S.C. § 1983 against various employees of the Pennsylvania Department of Corrections and a former member of the Pennsylvania Board of Probation and Parole (PBPP). In his complaint, Marrow alleges that his maximum release date on his BG4076 sentence was illegally extended by 17 years, from May 2, 2000, to January 28, 2017. He first maintains that Defendants McKinney and Mrs. Granlund, Record's Room employees at

2

SCI-Huntingdon, miscalculated his sentence by changing a 4-year suspended probation sentence imposed in 1994, to a 1-4 years' imprisonment sentence. He claims that he served that sentence under DOC Inmate No. DA5439 from June 25, 1996, until he was paroled on April 7, 1999. He also claims that Defendant Lawler, Superintendent at SCI-Huntingdon, lacked a sentencing order to hold him for that sentence. Marrow next claims that he was erroneously required to serve an 18-month parole violation sentence twice, first from 2002 to 2004, and then from 2006 to 2008. In between, he served prison time in New Jersey; he also argues that the DOC failed to credit his BG4076 sentence for the time served in New Jersey. Marrow alleges that, in response to his complaint that he was being held beyond the statutory maximum for his BG4076 sentence, certain defendants lied or misrepresented that information about his sentencing status sheets was unavailable, and all of the defendants were deliberately indifferent. He seeks injunctive relief, including 17 years' credit towards his current sentence under MV-5624, as well as monetary damages.

The Defendants filed motions to dismiss the complaint, which the District Court granted in part,[1] allowing Marrow to proceed with his Eighth Amendment claim against all of the defendants for deliberate indifference to his overincarceration. See ECF No. 42. After the close of discovery, Marrow and the defendants cross-moved for summary

---

[1] We will not review this decision because Marrow does not challenge it in any meaningful way on appeal. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (holding that arguments not developed in an appellant's opening brief are forfeited).

3

judgment. Defendants argued, inter alia, that Marrow failed both to administratively exhaust his claims[2] and to establish an Eighth Amendment violation. The District Court notified the parties that it would consider exhaustion in its role as fact-finder. See Paladino v. Newsome, 885 F.3d 203, 211 (3d Cir. 2018). After considering the parties' responses, the District Court denied Marrow's motion and granted judgment in favor of defendants. Marrow appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's order granting summary judgment de novo and review the facts in the light most favorable to the nonmoving party. Burns v. Pa. Dep't of Corr., 642 F.3d 163, 170 (3d Cir. 2011). A grant of summary judgment will be affirmed if our review reveals that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

First, Marrow's argument that the District Court failed to provide him an opportunity to file a statement of material facts and an affidavit to support his motion for summary judgment is meritless. Marrow was required to support his motion at the time it was filed with citations to materials in the record. See Fed. R. Civ. P. 56(c)(1)(A). Moreover, the District Court directed him to respond to the Defendants' motion for

---

[2] The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust "such administrative remedies as are available" before bringing suit under § 1983 to challenge prison conditions. Ross v. Blake, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)).

summary judgment, brief in support, and statement of material facts. Marrow's response, like his summary judgment motion, was largely filled with unsupported allegations and legal conclusions. The District Court therefore did not err in accepting the majority of the Defendants' facts as undisputed. See ECF No. 68 at 8 n.1; Fed. R. Civ. P. 56(e).[3]

Marrow argues that the District Court erred in granting summary judgment based in part on his failure to exhaust his administrative remedies. In Pennsylvania, inmate grievances are handled according to the DOC's Inmate Grievance System Policy DC-ADM 804. See Dkt. No. 63-8. As relevant here, the policy requires grievances to "identify individuals directly involved in the event(s)" and "request the specific relief sought." Id. at 5. It is beyond genuine dispute that Marrow failed to name Defendants Barkley, (Mrs.) Granlund, UM Granlund, Lawler, Marhelko, and McKinney in his administrative grievances, and there is no evidence that the prison excused that procedural defect. See Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004). The record also makes clear that Marrow failed to request monetary damages during the grievance proceedings. Indeed, Marrow admitted in his summary judgment response that he did not

---

[3] Marrow also argues that he sent a "Production of Complete Discovery" by certified mail to the District Court in January 2021, but it was not received because "the defendants" tampered with his mail. He claims that this "government interference" prevented him from establishing his claims at summary judgment. The parties were directed to complete discovery by February 5, 2021, but Marrow was not required to file any discovery motion with the Court. Moreover, the "Production of Documents" Marrow sought to present were in fact filed with the District Court on February 9, 2021 (ECF No. 55-1), and, again, he failed to support his claims at summary judgment. See Informal Br., Ex. 9(d)-(e).

properly exhaust his claims.[4]  See ECF No. 66 4, ¶ 18.  Rather, he claimed that

Defendants had waived the right to assert the lack of exhaustion as an affirmative defense

by failing to raise it in their motion to dismiss, an argument the District Court correctly

rejected.  See id.; see also Brown v. Croak, 312 F.3d 109, 111-12 (3d Cir. 2002).

Accordingly, summary judgment was warranted on these procedurally defaulted claims.

See Ross, 578 U.S. at 639 (noting that courts may not excuse a failure to exhaust).

As to the remaining defendants, Wolfe and Brittain, the District Court properly

concluded that the Eighth Amendment claim lacks merit.  The detention of an inmate

"beyond the termination of his sentence . . . violate[s] the [E]ighth [A]mendment's

proscription against cruel and unusual punishment" if the "incarceration [is] without

penological justification."  Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993).  To

recover for overdetention in violation of the Eighth Amendment, a plaintiff must show:

"(1) a prison official had knowledge of the prisoner's problem and thus of the risk that

unwarranted punishment was being, or would be, inflicted; (2) the official either failed to

act or took only ineffectual action under the circumstances, indicating that his response to

---

[4] Marrow claimed in his amended complaint that he grieved the matter in 2019; those grievances were part of the record before the District Court.  On appeal, he argues for the first time that he filed grievances in 2006 naming all of the defendants and also asking for monetary damages.  He fails to present evidence to support this claim, and, moreover, we will not consider arguments that were not presented to the District Court.  See Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011) (noting that arguments not raised in the district court generally will not be considered for the first time on appeal).

the problem was a product of deliberate indifference to the prisoner's plight; and (3) a causal connection between the official's response to the problem and the unjustified detention." Montanez v. Thompson, 603 F.3d 243, 252 (3d Cir. 2010). We have recognized that deliberate indifference may be shown where "prison officials were put on notice and simply refused to investigate a prisoner's claim of sentence miscalculation." Moore, 986 F.2d at 686. We agree with the District Court that such is not the case here.

In his grievances, Marrow did not specifically challenge his sentence under DA5439 or any particular parole violation sentence. Rather, he alleged generally that there were "miscalculations" with his BF4076 sentence and that his maximum date of release was erroneously extended from 2000 to 2017. He claimed to have "proof against the PBPP" and proof that the records department at SCI-Huntingdon acted fraudulently, but he failed to provide any evidence to support his claim. ECF No. 63-9 at 5. In the initial response, an inquiry was made of Defendant Wolfe, the Records Supervisor at SCI-Frackville, who indicated that Marrow's maximum release date was extended because of "several new convictions plus escape time." ECF No. 63-9 at 6. The response also advised Marrow that the PBPP was responsible for calculating "the [parole violator] max dates on recommits, not the DOC." Id. On appeal, Defendant Superintendent Brittain, the Facility Manager, indicated that the Corrections Classification and Program Manager had investigated Marrow's claim and that there was no basis to dispute the denial of the grievance. And on final appeal, the Chief Grievance

7

Officer (CGO) indicated that further review of the records of the Centralized Sentence Certification Unit affirmed that Marrow "violated [his] parole several times under BG4076 by committing new crimes," and that he "escaped at one point" after being "recommitted" as a technical parole violator, resulting in "a new state sentence running concurrent with your back time."[5]  ECF No. 63-9 at 1.  The CGO indicated that Marrow's actions caused his "parole violation maximum date to be extended" and that, after his latest offense, the PBPP established his maximum parole date of January 28, 2017.  Id.  On this record, there is no genuine dispute that defendants investigated and were not deliberately indifferent to Marrow's overincarceration claim.[6]

Based on the foregoing, we will affirm the District Court's judgment.

---

[5] In Pennsylvania, parole violators are to be recommitted for the remainder of their original sentence, and a technical parole violator may be "reentered to serve the remainder of the original sentence or sentences."  61 Pa. C.S.A. § 6138(c).  Furthermore, a defendant must serve back time for an original sentence consecutively to any new sentence as a convicted parole violator.  See Commonwealth v. Dorian, 468 A.2d 1091, 1092 (Pa. 1983) (per curiam).

[6] Marrow's motion to stay this appeal while he seeks state habeas review is denied.